# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: *Rusty Sander, et. al v. 3M Company, et. al*; Case No. 3:19-cv-03079-MCR-GRJ | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO REMAND</u>

3M Company ("3M") removed this case based on the federal officer removal statute and federal question jurisdiction under the "federal enclaves" doctrine. But 3M failed to meet its burden for removal.[1]

### <u>ARGUMENT & AUTHORITIES</u>

3M's removed this case based on arguments as defective as the CAEv2 earplugs it sold.[2] Its Notice of Removal purports to be premised on the federal

---

[1] 3M has the burden to demonstrate removal is appropriate. *See* 28 U.S.C. § 1441(a); *see also C. Iowa Power Co-op v. Midwest Indep. Trans. Sys. Op., Inc.*, 516 F.3d 904, 912 (8th Cir. 2009). All doubts about the existence of subject matter jurisdiction should be resolved in favor of remand. *See id.*

[2] The earplugs at issue are 3M's dual-ended Combat Arms™ Earplugs-Version 2 (CAEv2). Due to the earplugs' defective design and 3M's failure to warn of their defective condition, Plaintiffs suffer from hearing loss and tinnitus. Accordingly, Plaintiffs have asserted state law claims for strict products liability (design defect

1

officer removal statute, 28 U.S.C. § 1442(a)(1), and federal question jurisdiction under the "federal enclaves" doctrine, 28 U.S.C. § 1441—but it is grounded on assumptions 3M does not know to be true; alleged "facts" which are, in fact, not facts at all; and a fatal procedural flaw in the sense that Defendant, Aearo Technologies, LLC, though properly served, did not consent to removal as is required under 28 U.S.C. §1446(b)(2)(A).

As such, this Court should remand this matter back to the Fourth Judicial District of Hennepin County, Minnesota, because it raises no federal question, there is no federal officer jurisdiction, and there is no federal enclave jurisdiction. Moreover, 3M provides no evidentiary support whatsoever for its removal, as is required.[3]

## I.     THERE IS NO FEDERAL QUESTION

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and federal statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal citation omitted). Federal question jurisdiction exists where

---

and failure to warn), negligence, and violation of the Minnesota Uniform Deceptive Trade Practices Act.

[3] This Court has a duty to determine whether it has subject matter jurisdiction and "shall" remand cases in which it does not have jurisdiction. *See generally* 28 U.S.C. § 1447(c*); see also Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 334 (8th Cir. 2016) (finding lack of subject matter jurisdiction after appeal and remanding to state court).

there is a federal question on the face of the complaint or in a "special and small category" in which the plaintiff's claims "arise under" federal law. *Id.* at 257-58.

But, in this matter, Plaintiffs bring only prototypical state tort law claims against Defendants. The claims—strict products liability (design defect and failure to warn), negligence, and violation of the Minnesota Uniform Deceptive Trade Practices Act—are not created by federal law but are purely creatures of state common law. Faced with these run-of-the-mill state law claims, 3M tries to invoke federal question jurisdiction by arguing that at least one of its affirmative defenses will require analysis of federal law. But 3M falls far short of its burden to prove this Court has federal question jurisdiction based on its potential defenses. Accordingly, this matter should be remanded back to Minnesota state court.[4]

## II.    THERE IS NO FEDERAL OFFICER JURISDICTION

"Federal Officer Jurisdiction" originates and stems from Congress's directive in 28 § U.S.C. 1442(a)(1) that:

> (a)  A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or

---

[4] Removal based on diversity jurisdiction is prohibited because the case was brought in Defendants' home state. *See* 28 U.S.C. § 1441(b)(2).

individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442. As the text of the statute makes clear, "[t]he federal officer removal statute is designed to protect officers of the federal government who[,] when acting pursuant to the authority granted them under federal law, run afoul of the laws of a state." *Trans. Hosps. Corp. of La., Inc. v. La. Health Serv.*, No. Civ. A.02-354, 2002 WL 1303121, at *4 (D. La. June 12, 2002). It is undisputed that 3M is not a federal officer, and there is no evidence whatsoever that it employs any federal officers.

Instead, 3M argues it was acting under the direction of a federal officer and thus gets the statute's benefit. But, because 3M is a private entity, it bears a "special burden" of establishing the official nature of its activities. *Freiburg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1150 (D. Co. 2002) ("Because it is premised on the protection of federal activity and an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit, private actors seeking to benefit from [§ 1442(a)(1)] bear a special burden of establishing the official nature of their activities."); *Dunevant v. Healthcare USA of Missouri, L.L.C.*, No. 4:08CV702 FRB, 2008 WL 4066384, *2 (E.D. Mo. Aug. 27, 2008) ("Although this removal statute [section 1442(a)(1)] is to be liberally

construed, private actors seeking to benefit from its provisions bear a special burden of establishing the official nature of their activities." (internal citations omitted).

3M's "special burden is warranted because the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not applicable to private parties." *Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross/Blue Shield of New Jersey*, 518 F. Supp. 2d 128, 133 (D. N.J. 2007) (internal quotation and citation omitted); *see also Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007) ("[T]he help or assistance necessary to bring a private person within the scope of [section1442(a)(1)] does not include simply complying with the law . . . that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored."). As this Court presciently noted before the Supreme Court decided *Watson*, merely participating "in a regulated industry is insufficient to support removal unless the challenged conduct is closely linked to detailed and specific regulations." *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 428 F. Supp. 2d 1014, 1017 (D. Minn. 2006). To hold otherwise "would allow for federal jurisdiction over virtually any participant in a regulated industry." *Id.* at 1018; *see also Watson*, 551 U.S. at 153. With this context in mind, 3M must satisfy four separate elements for federal officer jurisdiction to apply: (1) the defendant has a colorable federal defense to the plaintiffs' claims; (2) a defendant has acted under the direction of a federal officer;

(3) there was a causal connection between the defendant's actions and the official authority; and (4) the defendant is a "person" within the meaning of the statute. *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012). 3M failed to establish the first three requirements.

## A. 3M Has No Colorable Federal Defenses

"Federal officer removal must be predicated on the allegation of a colorable federal defense." *Mesa v. California*, 489 U.S. 121, 129 (1989). As the Supreme Court explained, section 1442(a) "is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant." *Id.* Accordingly, the statute "cannot independently support Article III 'arising under' jurisdiction. Rather, it is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Article III purposes." *Id.* at 136-37. Here, 3M fell well short of its burden to allege a colorable federal defense.

### 1. 3M Has No Colorable Government Contractor Defense

3M argues it has a colorable government contractor defense because the military made a discretionary determination regarding the requirements and design of the CAEv2's benefits and risks. But federal courts have recognized that the government contractor defense "is fundamentally a claim that '[t]he Government made me do it.'" *Caldwell v. Morpho Detection, Inc.*, No. 4:10CV1537 JAR, 2013

WL 500867 (E.D. Mo. Feb. 11, 2013) (collecting cases, internal citations and alterations omitted). Thus, the government contractor defense is an affirmative defense, and 3M bears the burden to establish it. *See id.* To meet this burden, 3M must show: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).

3M woefully failed to satisfy the second and third prongs of this affirmative defense.[5] Plaintiffs do not allege injuries arising out of conformity to certain specifications; rather, Plaintiffs allege injuries arising from, among other things, Defendants' defective design of the ear plugs and failure to warn Plaintiffs about their defective condition. Similarly, contrary to 3M's wholly-unsubstantiated assertion that the government "was adequately informed," Defendants knowingly submitted false and misleading testing data. This fraud is diametrically opposed to adequately warning the government about the defective nature of the CAEv2 earplugs.

### 2. 3M Has No Colorable Combatant Activities Defense

3M's argument that it has a combatant activities defense fails on its own terms. Defendants cannot colorably contend they were combatants, much less engaged in

---

[5] Plaintiffs do not concede 3M can prove the first prong of the affirmative defense.

combatant activities. Courts have readily rejected the availability of the combatant activities defense for private contractors, ruling that application of a combatant activities defense to private contractors improperly extends sovereign immunity to private actors, and improperly conflates the judicially-created government contractor defense with the legislatively-mandated combatant activities exception:

> [T]his Court declines to endorse such a defense for private contractors based solely on the fact that Defendants were operating in a combat zone. **This Court can find no persuasive authority for the conclusion that the combatant activities exception preempts state tort law claims. The combatant activities exception to the FTCA is an explicit legislative preservation of sovereign immunity, while the government contractor defense is a judicially recognized affirmative defense. . . .** Private contractors are not entitled to sovereign immunity unless they are characterized as government employees, which Defendants are not. *Foster v. Day & Zimmermann, Inc.*, 502 F.2d 867, 874 (8th Cir. 1974) ("The doctrine of sovereign immunity may not be extended to cover the fault of a private corporation, no matter how intimate its connection with the government."). There is no express authority for judicially intermixing the government contractor defense and the combatant activities exception; nor is there authority for bestowing a private actor with the shield of sovereign immunity. Until Congress directs otherwise, private, non-employee contractors are limited to the government contractor defense and Boyle preemption analysis. Unless they qualify as employees or agents of the Government, private contractors may not bootstrap the Government's sovereign immunity.

*McMahon v. Presidential Airways, Inc.*, 460 F. Supp. 2d 1315, 1330 (M.D. Fla. 2006), *aff'd*, 502 F.3d 1331 (11th Cir. 2007).

The Eighth Circuit has long held sovereign immunity does not extend to private contractors such as Defendants. *Foster*, 502 F.2d at 874. In *Foster*, the plaintiff alleged a faulty grenade exploded in his hand during a training exercise at Ft. Benning, Georgia. Defendants asserted that, as suppliers of government munitions, they were entitled to the protections of government immunity. *Id.* But the court readily rejected the defendant's sovereign immunity defense. *Id.*

This makes sense because the combatant activities exception is narrowly construed to shield military combat decisions from state law regulation. *Saleh v. Titan Corp.*, 580 F.3d 1, 8-9 (D.C. Cir. 2009). Where contract employees are under the direct command and exclusive operational control of the military chain of command such that they are functionally serving as soldiers, preemption ensures that they need not weigh the consequences of obeying military orders against the possibility of exposure to state law liability. *Id.* It is the military chain of command that the FTCA's combatant activities exception serves to safeguard.

While 3M hangs its argument regarding products liability on *Bentzlin v. Hughes Aircraft, Co.*, 833 F. Supp. 1486, 1492 (C.D. Cal. 1993), subsequent cases have expressed serious doubts—both on policy and statutory construction grounds— about the continuing validity of *Bentzlin*. As aptly explained by the court in *McMahon v. General Dynamics Corp.*, tort law does not "lose[] its salutary capacity to encourage care, punish negligence and spread the cost of accidents, simply

because the customer happens to be the government. Indeed, where the purchaser and the person likely to be injured are not the same, it may be more important to give the latter a voice and a means of recourse. The tort system, here as elsewhere, can help enforce the highest standard of care in the production of the equipment upon which our servicemen and servicewomen rely. . . ." *McMahon v. Gen. Dynamics Corp.*, 933 F. Supp. 2d 682, 692 (D. N.J. 2013) (citing *Bentzlin*, 833 F. Supp. at 1493–94).

Additionally, *Bentzlin* is distinguishable. First, the non-controlling Central District of California reasoned that "[t]he exigencies of war often require high-tech equipment to be delivered to the 'front' as quickly as possible. In war, the benefit of producing weapons and transporting them as quickly as possible to arm American soldiers far outweighs the risks of defective workmanship; soldiers' lives may be lost as a result of delays in the delivery of weapons." *Bentzlin*, 833 F. Supp. at 1493. Here, the CAEv2 was developed over several years and was not being delivered to the front line on an emergent basis. Second, in *Bentzlin*, the government intervened in the plaintiff's case to protect military secrets regarding strategy and classified information regarding the Maverick AGM–65DMissile's capabilities. *Id.* at 1487. Here, the CAEv2 was not only sold to the military, they were sold for commercial use. As *Bentzlin* recognized, "not all military equipment is based on design which cannot be disclosed without impinging on federal interests, and therefore this

preemption doctrine is limited to combat equipment with no civilian counterpart."
*Id.* at 1491.

### 3. 3M Has No Colorable Political Question Defense

3M's political question defense fails as well. Any purported political question defense would deprive this Court of subject matter jurisdiction, not confer jurisdiction. Even assuming 3M may use a jurisdiction-depriving defense to confer jurisdiction, the defective design, manufacture, and sale of earplugs is not a non-justiciable political question. In assessing whether there is a nonjusticiable political question, "the primary question is whether a particular suit will require the Court to reexamine a military judgment." *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1102 (N.D. Ill. 2015). A "military judgment" means wartime "strategy and tactics" such as whether to mine Vietnamese harbors, order airstrikes, or the military's decision to free a captured vessel. *Tiffany v. United States*, 931 F.2d 271, 277 (4th Cir. 1991). Accordingly, courts carefully scrutinize attempts by private defendants to invoke the political question doctrine: "Given that the [political question] doctrine is largely driven by separation of powers principles, the Court must give more scrutiny to the defense when it is raised by a private contractor rather than a coordinate branch of the United States government." *Id.* (collecting authority). Defendants' fraudulent representations and defective manufacture and design of CAEv2s it sold to the military are not "strategy and tactics employed on the battlefield. . . ." *Id.* Put simply,

this is not a case about reexamining a military judgment, it is a case about a private vendor selling defective equipment to the military under false pretenses.

3M's observation that "military activities often give rise to political questions" proves nothing. Defendants here are not military contractors who operated a helicopter in a war zone and are claiming *Feres* derivative sovereign immunity. *See McMahon*, 502 F.3d at 1336. Defendants are not fighter pilots who accidentally collided with an unregistered civilian aircraft entering U.S. airspace. *See Tiffany*, 931 F.2d at 277. They are not contractors transporting soldiers in military convoys in Iraq. *See Whitaker v. Kellogg Brown & Root, Inc.,* 444 F. Supp. 2d 1277, 1278 (M.D. Ga. 2006); *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1277 (11th Cir. 2009). Rather, Defendants are parts manufacturers who sold defective safety parts commercially while also selling them to the military, all under false pretenses, thereby causing Plaintiffs and thousands of others to suffer tinnitus and hearing loss. *See Carmichael*, 572 F.3d at 1275.

In sum, 3M's cases make it clear that the political question doctrine is only available to contractors engaged directly in foreign combat activities because such combat activities tend to involve sensitive questions of military judgment and therefore encroach on the political branches. 3M cites no cases for the proposition that a private vendor who sells defective equipment may assert that its conduct presents a nonjusticiable political question.

**B. 3M Was Not "Acting Under" the Direction of a Federal Officer When It Negligently Designed CAEv2, Falsified Test Data, and Failed to Warn Plaintiffs**

When a private entity invokes section 1442(a)(1), it must "demonstrate that a federal officer has direct and detailed control over it." *Kaye v. Sw. Airlines Co.*, No. Civ.A.3:05CV0450-D, 2005 WL 2074327, at *3 (N.D. Tex. Aug. 29, 2005) (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399-400 (5th Cir. 1998); 16 James Wm. Moore et al., *Moore's Federal Practice* § 107.15(1)(b)(ii) (3d ed. 2005)); *see also Vucinovich v. Chalmette Med. Ctr., Inc.*, No. 06-7371, 2007 WL 2710830, at *2 (E.D. La. Sept. 12, 2007); *Dunevant v. Healthcare USA of Missouri, L.L.C.*, No. 4:08CV702 FRB, 2008 WL 4066384, *7 (E.D. Mo. Aug. 27, 2008). Importantly, "the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail" does not bring a company within the scope of section 1442(a)(1)'s "acting under" language. *Watson*, 551 U.S. at 145. And "[c]ourts generally have not found jurisdiction where the government officer did not directly require a purported agent to take specific actions." *McGillick v. World Trade Ctr. Props., LLC*, No. 04 Civ. 3747(AKH), 2004 WL 2049260, at *3 (S.D.N.Y. Sept. 13, 2004); *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 847–48 (S.D. Ill. 2006) ("Federal officer removal is not supported by the bare fact of government approval of a defendant's action.") (citing *Parks v. Guidant Corp.*, 402 F. Supp. 2d 964, 968 (N.D. Ind. 2005)). In other words, 3M must show more than

considerable and detailed monitoring, direction, and supervision. It must show that it was so "intimately involved with government functions as to occupy essentially the position of an employee." *Alsup*, 435 F. Supp. 2d at 846.

As the exhaustive discussion in *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1102 (N.D. Ill. 2015), makes clear: "Numerous other courts have found federal officer jurisdiction lacking where, as here, there was some tangential involvement by the federal government, but the private defendant made the actual decisions that formed the basis of the plaintiff's claims." 137 F. Supp. 3d at 1098 (collecting cases). Thus, courts have rejected federal officer jurisdiction where a government contractor contracted for disposal of fireworks and was operating without day to day control; where a private company controlled actual operation of a plant where claims related to improper disposal of certain chemicals; and where an employee was injured while a federal contractor was building a nuclear power plant for the federal government. *See id.* (collecting and summarizing cases); *see also Harris v. KBR*, 724 F.3d 458, 467 (3d. Cir. 2013) ("[W]here the military does not exercise control but merely provides the contractor with general guidelines that can be satisfied at the contractor's discretion, contractor actions taken within that discretion do not necessarily implicate unreviewable military decisions.").

3M fails to show even considerable and detailed monitoring, much less that it was essentially in the position of an employee such that its ability to fulfill its state

obligations were impaired. First, 3M's unsworn, unsubstantiated factual averments should be disregarded, and 3M's removal effort fails for this reason alone. *See Alsup*, 435 F. Supp. 2d. at 847 ("a removing defendant must 'by direct averment exclude the possibility that a state-court action against the defendant was based on acts or conduct of his not justified by his federal duty.'") (quoting *Mesa v. California*, 489 U.S. 121, 132 (1989)).

Second, 3M seems to pin its hopes for removal on Dr. Doug Ohlin, who is now deceased. But 3M has not established Dr. Ohlin was a federal officer. In fact, according to Dr. Ohlin's own obituary and online author biography, he was not an officer or even an employee of the government, but instead merely a "consultant" to the government and was also, by the way, a consultant to 3M.[6]  By 2009, Dr. Ohlin was writing published works for Aearo Technologies, and had a 3M email address (doug.ohlin@mmm.com).[7]

---

[6] *See* Dr. Douglas Warren Ohlin Legacy.com obituary, published in the *Baltimore Sun* on July 2, 2013, https://www.legacy.com/obituaries/BaltimoreSun/obituary.aspx?page=lifestory&pid=16640899 (last visited Aug. 20, 2019).  Dr. Ohlin served as a "consultant and program manager for hearing conservation. . . . He was also a contract consultant to 3M"); *Industrial Safety & Hygiene News*, Author Biography for Dr. Doug Ohlin, https://www.ishn.com/authors/2445-doug-ohlin (last visited Aug. 20, 2019) ("Dr. Dough Ohlin is an audiologist who for 35 years **served as a consultant** to the U.S. Army Hearing Conservation Program.  **In his consultant capacity, he was Program Manager for Hearing Conservation. . . .**") (emphasis added).

[7]          *See*          http://www.noiseandhealth.org/article.asp?issn=1463-1741;year=2009;volume=11;   issue=42;spage=22;epage=25;aulast=Ohlin   (Doug Ohlin,    Aearo    Technologies,    Indianapolis,    IN);    *see    also*

.    3M has not provided any evidence that Dr. Ohlin's "directives," such as asking that Defendants make earplugs that would fit in a carrying case, amounted to the level of control necessary to relegate 3M to the position of what amounts to merely an employee of the government who is stripped of all decision-making discretion. Federal courts have readily ordered remand when the federal government provides broad guidelines that still allow private vendor's discretion, especially when the Plaintiff alleges the private vendor performed the procured service negligently or improperly.

For example, courts have rejected private companies' arguments that they acted under a federal officer when:

1) the companies provided purportedly FEMA-directed evacuation services in a negligent manner (*Vucinovich v. Chalmette Med. Ctr., Inc.*, No. 06-7371, 2007 WL 2710830, at *2 (E.D. La. Sept. 12, 2007);

2) governmental waste-cleanup vendors negligently disposed of hazardous waste (*Clayton v. Cerro Flow Prod., Inc.*, No. 09-550-GPM, 2010 WL 55675, *7 (S.D. Ill. Jan. 4, 2010) (collecting and discussing analogous waste cleanup cases)); and

---

https://www.ehstoday.com/ppe/    hearing-protection-not-about-noise-1342    (last viewed Aug. 20, 2019) ("He presently is . . . a contract consultant to 3M.  He can be contacted at doug.ohlin@mmm.com.").

3) asbestos manufacturers could not show the government affirmatively instructed the manufacturer not to warn (*Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 663 (E.D. Tex. 1999) ("the federal government provided no direction or control on warnings when using asbestos [and] did not prevent Defendants from taking their own safety precautions heeding state-law standards."); *Gauthe v. Asbestos Corp.*, No. Civ. A. 96-2454, 1997 WL 3255, *3 (E.D. La. Jan. 2, 1997) (rejecting federal officer jurisdiction because there was "no evidence that the Government restricted or prohibited [defendant's] ability to notify individuals of the presence of asbestos in the work environment.")).

Even considering the government's bidding and procurement process, Defendants were left with a host of design and manufacturing decisions. For example, Defendants had to decide: how to design the earplugs; what materials to use; where to source such materials; what manufacturing processes it would utilize; what quality control procedures it would utilize; which employees would be involved at every step of the design and manufacturing process; what warnings or instructions they would include, if any; etc. While 3M seeks to differentiate Defendants' manufacturing and selling of the CAEv2 product as wholly distinct from a typical supplier-buyer relationship, the record does not support that argument. The buyer (in this case the military) put out a request for bid with some performance

and quality standards. The military awarded the supply contract to the lowest bidder. Nothing in Plaintiffs' Complaint says, suggests, or even insinuates that the military dictated design and manufacturing details; and the military certainly did not instruct Defendants to not provide proper fitting instructions.

Third, contrary to 3M's characterization, Plaintiffs' allegations *flatly contradict* the notion that Defendants "acted under" the direction of a federal officer. Plaintiffs allege that in 2003 Aearo knowingly falsified testing data to win a bid to supply large quantities of ear plugs to the military. 3M provides no authority that a private vendor who submits phony data to support a government contract bid "acts under" the direction of a federal officer. For good reason, such conduct is irreconcilable with a private entity "acting under" the direction of a federal officer.

Fourth, 3M argues it was "acting under" a federal officer because its CAEv2, according to 3M, was a "vital product that in the absence of Defendants, the Government would have had to produce itself." There is absolutely no evidentiary support for such a statement, neither in Plaintiffs' Complaint nor even in 3M's unverified, unsubstantiated, self-serving fact section in its Notice of Removal. And that is because it is simply not true. Just the opposite, rather, is true—there was competition to supply the government with earplugs from another company called Moldex Metric, Inc. (which manufactured the Moldex Battleplug). In fact, significant litigation occurred in this District when 3M filed sham patent litigation

against Moldex, which was followed by antitrust litigation where Moldex accused 3M of anticompetitive conduct specifically related to 3M's CAEv2 earplugs. *See, e.g.*, *Moldex Metric, Inc. v. 3M Co.*, Case No. 14-cv-01821, 2015 WL 12780466 (D. Minn. 2015). Thus, there is no basis for this Court to conclude the government would have had to manufacture its own earplugs were it not for Defendants.

Moreover, the cases cited by 3M are inapposite and distinguishable. In *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1227 (8th Cir. 2012), for example, the Office of Personnel Management (OPM) contracted with a private health insurer to provide healthcare insurance for federal employees. The private insurer's plan included a subrogation provision. The insured federal employee challenged the insurer's prosecution of a subrogation claim under Missouri law. The Eighth Circuit noted a split of authority regarding whether the federal officer removal statute applied on such facts. *Id.* at 1232. But reviewing the legislative history of Federal Employees Health Benefits Act ("FEHBA"), the court concluded the federal government had "sufficiently delegated authority to [private carriers] to undertake the task of insuring federal employees." *Id.* at 1233. In reaching its conclusion, the court noted the subrogation process was regulated by OPM under the auspices of a comprehensive statutory and regulatory scheme under FEHBA. The court further noted that relevant regulations provided that OPM would resolve disputes about an enrolled employee's coverage." *Id.* at 1233–34. In other words, the private insurer

had been "delegated" the contractual subrogation right under the direct and detailed control of the OPM, which (at least colorably) displaced state law to the contrary. *See id.* But 3M points to no such delegation (contractual or otherwise) here. And this is because there was no such delegation: the government did not direct or otherwise authorize Defendants to violate state law. *See Alsup*, 435 F. Supp. 2d at 848 ("In other words, the defendant must prove, 'The government made me do it.'"). And there was nothing in Defendants' contractual relationship with the government preventing Defendants from complying with their state law obligations to Plaintiffs.

Tellingly, the products liability cases cited by 3M involve ***conformance*** with government specifications, where such conformance results in the manufacturer's violation of a state law obligation. In *Winters v. Diamond Shamrock Chem. Co.*, "the district court determined that the Defense Department had contracted with the chemical companies for a specific mixture of herbicides, which eventually became known as Agent Orange. 149 F.3d 387, 398 (5th Cir. 1998). "The [district] court further found that the defendants were compelled to deliver Agent Orange to the government under threat of criminal sanctions." *Id.* Of course, nowhere is it alleged nor argued that 3M designed and developed the CAEv2s under threat of criminal prosecution by the government.

Even more telling, in *Winters*, the record reflected the government's express prohibition of warnings: "The Government also inspected the labeling of the drums

in which 'Agent Orange' was shipped. Nothing but what the Government specified was allowed to be placed on the drums. . . . No warning was placed on the containers, and **none was permitted by the contract specifications**." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399 (5th Cir. 1998) (emphasis added); *cf. Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 2d 311, 315 (E.D.N.Y. 2014) ("Defendants were **not permitted** to include asbestos warnings, even though the Navy possessed extensive knowledge about the health risks and effects of exposure to asbestos. Two of the physicians' affidavits conclude that the **Navy knew more about asbestos** than defendants.") (emphasis added). Here, in stark contrast, 3M makes no showing that the government knew more about Defendants' defective earplugs and likewise makes no showing whatsoever that the government instructed Defendants not to warn about the dangerous and defective condition of the earplugs.

## C. There is No Causal Connection Between 3M's Actions and Official Authority

For many of the same reasons 3M cannot show it acted under the direction of official authority, 3M also cannot show a causal connection between its actions and any official authority. *See Mesa*, 489 U.S. at 131-32 ("There must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the prosecution of him, for whatever offense, has arisen out of the acts done by him under color of federal authority and

in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty.").

3M fails to show any causal nexus whatsoever between a federal officer's instructions and Defendant's defective design or failure to warn regarding the defect. 3M argues (without support) that Dr. Ohlin generally supervised the CAEv2 program. But 3M cannot colorably exclude the possibility that Plaintiffs' allegations are based on acts and conduct unjustified by federal duties: it points to no federal duty that required Defendants to produce defective earplugs with inadequate warnings; and it points to no federal duty requiring it to falsely certify testing data.

In *Clayton v. Cerro Flow Prod., Inc.*, the court considered the defendant's federal officer defense in connection with the disposal of hazardous waste. *See* No. 09-550-GPM, 2010 WL 55675, *7 (S.D. Ill. Jan. 4, 2010). While the court found that "Defendants acted under the general auspices of a federal officer," such a finding was not enough to show the requisite causal nexus:

> [T]he record in this case does not show that federal officers dictated the manner in which the removing Defendants disposed of chemical wastes or compelled them to dispose of those wastes improperly and instead it shows only that the removing Defendants acted under the general auspices of a federal officer. Absent proof of a causal nexus between the acts complained of by Plaintiffs and the orders of a federal officer, the Court finds that the removal of this case pursuant to 28 U.S.C. § 1442(a)(1) is improper and that the case is due to be remanded to state court.

*See id.* (collecting analogous cases). In other words, when a manufacturer contracts with the federal government to carry out specific tasks, it may not simply point to its federal contract to confer federal officer status, particularly when it executes such tasks in an improper or negligent manner.

As with the "acting under" element, the cases 3M relies on are restricted to fact patterns where the defendant was directed to commit the alleged tort. For example, in the Agent Orange cases relied on by 3M, the military specifically directed the manufacturer to not put warnings on barrels of Agent Orange. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399 (5th Cir. 1998); *cf. Gordon*, 990 F. Supp. 2d at 315. 3M points to no such instruction here. As such, 3M falls far short of the required showing that the government instructed it to violate its state law duties to Plaintiffs.

## III.    THERE IS NO FEDERAL ENCLAVE JURISDICTION

3M cannot satisfy its burden to demonstrate federal enclave jurisdiction because it failed to identify a federal enclave and, moreover, removal under 28 U.S.C. § 1441 requires the consent of all defendants (which consent 3M has failed to demonstrate).

### A. 3M Failed to Identify a Federal Enclave

3M assumes Plaintiffs' injuries arose, in whole or in part, on a federal enclave. But, in reality, Plaintiffs' injuries occurred in combat, combat training, and combat

arms and weaponry in American military settings throughout the world, including in

Iraq and Afghanistan. American military installations on foreign soil such as Iraq

and Afghanistan are not federal enclaves because Article 1, Section 8 of the U.S.

Constitution (from which "federal enclave" jurisdiction flows) only applies to land

in the United States:

> The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, **by Cession of particular States**, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; . . .

U.S. Const. art. I, § 8, cl. 17 (emphasis added); *see also Nguyen v. Allied Signal,

Inc.*, No. C 98-03616 SI, 1998 WL 690854 (N.D. Cal. Sept. 20, 1998) ("Defendants

cite no case involving federal enclave jurisdiction where the military base was

located overseas, in another sovereign nation, nor have they made a factual showing

concerning any of the sovereignty issues normally involved in the federal enclave

analysis."); *Harris v. Kellogg, Brown & Root Servs., Inc.*, 796 F. Supp. 2d 642, 645

(W.D. Pa. 2011) (concluding similarly); *Gavrilovic v. Worldwide Language Res.,

Inc.*, 441 F. Supp. 2d 163, 176-77 (D. Me. 2006) (same); *Goodwin v. Dyncorp Int'l

LLC*, No. 3:14-cv-116/RV-EMT, 2014 WL 12570917, at *2-4 (N.D. Fla. May 16,

2014) (same). Rather, federal courts have construed this clause of the Constitution

as creating "federal enclaves," essentially small carve-outs within the States where the federal government purchases lands from a state and consequently federal jurisdiction lies. *See, e.g., Leslie v. Maida Eng'g, Inc.*, No. 4:13-CV-614 (CEJ), 2013 WL 2403849, at *1 (E.D. Mo. May 31, 2013) (internal citation omitted).

3M self-assuredly states in its Notice of Removal that, "[w]hile Plaintiffs' Complaint does not specifically identify the U.S. military facilities where they were issued and used CAEv2 and allegedly suffered hearing damage, one or more of these facilities undoubtedly qualifies as a federal enclave." But even actions arising on federal property are not instantly removable under federal enclave jurisdiction: "[T]he fact that plaintiff's cause of action arose on federally-owned property is insufficient to establish federal question jurisdiction." *Id.* at *1 (granting motion to remand claim of negligence by a U.S. Park Service employee for injuries sustained at St. Louis Arch because the evidence did not show the state granted jurisdiction to the federal government); *see also Schiappa, Sr. v. Brookhaven Science Assocs., LLC*, 403 F. Supp. 2d 230, 236 (E.D.N.Y. 2005). Accordingly, 3M's speculation that Plaintiffs' claims arose on a federal enclave falls far short of its burden to invoke federal question jurisdiction.

Moreover, even if some of the injuries suffered by Plaintiffs did occur on a federal enclave, that too is not sufficient to confer jurisdiction. After all, "[w]hen exposures allegedly occur partially inside and partially outside the boundaries of an

enclave an argument would surface that the state's interest increases proportionally, while the federal interest decreases." *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 826 (E.D. Tex. 1994).

Federal courts have similarly rejected federal enclave jurisdiction where the upstream actionable decision making happens outside the federal enclave. *See, e.g., Camargo v. Gino Morena*, No. EP-10-CV-242-KC, 2010 WL 3516186, at *2 (W.D. Tex. Sept. 2, 2010) ("For federal enclave jurisdiction to apply, in employment discrimination cases, the adverse employment decision must have been made on federal territory, because the locus of decision-making is where such a tort arises.") (citing *Lawler v. Miratek Corp.*, No. EP-09-CV-252-KC, 2010 WL 743925, at *3-4 (W.D. Tex. Mar. 2, 2010)); *see also Polar Ice Cream & Creamery Co. v. Andrews*, 375 U.S. 361, 388-89 (1964).

Lastly, it is important to note that 3M's threadbare allegations that Plaintiffs' injuries arose on a federal enclave are insufficient in yet another manner. Specifically, in addition to reciting inapposite federal enclave cases while ignoring Plaintiffs' allegations, 3M hangs its argument on *Jamil v. Workforce Res., LLC*, No. 18-CV-27-JLS (NLS), 2018 WL 2298119, at *1 (S.D. Cal. May 21, 2018). But *Jamil* only strengthens Plaintiffs' argument for remand for at least two reasons. First, *Jamil* involved a specifically-identified federal enclave (Camp Pendleton) where contract workers claimed uncompensated wages under California law for

work performed there.  *Id.* at *1.  Importantly, the *Jamil* court first noted the court's

two previous findings that Camp Pendleton was a federal enclave.  *Id.*  In this case,

however, 3M simply concludes Plaintiffs' injuries arose at least in part on federal

enclaves but, of course, points to no such finding by this Court or any other.

Second, *Jamil* specifically found the following:

> . . . federal jurisdiction was properly pled in Plaintiffs'
> Complaint.  Although some events took place on Camp
> Pendleton and others took place at Defendants' office, it is
> clear that the majority of the pertinent events took place on a
> federal enclave.  The allegations stem from Plaintiffs'
> employment and work performed at Camp Pendleton.

*Id.* at *4.  Here, on the other hand, Plaintiffs' Complaint does not allege that the

"majority of the pertinent events" took place on a federal enclave.

## B. Removal Would Require Consent of All Defendants, But 3M Failed to Obtain the Consent of Aearo Technologies, LLC

Congress, in 28 U.S.C. § 1446, has provided clear guardrails for removal

under 28 U.S.C. § 1441(a) based on purported federal enclave jurisdiction:  "When

a civil action is removed solely under section 1441(a), ***all defendants*** who have been

properly joined and served must join in or consent to the removal of the action."  28

U.S.C. § 1446(b)(2)(A) (emphasis added); *see also Noske v. Noske*, 980 F. Supp.

1026, 1029 (D. Minn. 1997) (internal citations omitted); *Morton v. Interamerican

Mfg., Inc.*, No. 00-0030-CV-W-6-ECF, 2000 WL 420614, at *2 (W.D. Mo. Apr. 17,

2000) (citing *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing, Local 349*, 427 F.2d 325, 326-27 (5th Cir. 1970)).

In an unsuccessful attempt to satisfy the clear mandate regarding consent, 3M included a footnote in its Notice of Removal stating Defendant Aearo Technologies LLC "consents to this removal."[8]  But there is nothing in the record to indicate either 3M or its counsel is authorized to provide consent for Defendant Aearo Technologies LLC.  After all, if Aearo Technologies LLC consented to removal, it should have and could have—*but did not*—affirmatively join or consent to 3M's Notice of Removal.  *See Couzens v. Donohue*, 854 F.3d 508, 515 (8th Cir. 2017) ("non-removing defendants who wish to evince consent to removal should either sign the notice of removal or file a timely and unequivocal consent") (quoting *Christianson v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 933 (8th Cir. 2012)); *see also Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1187 (8th Cir. 2015) ("a defendant's timely removal notice indicating consent on behalf of a codefendant, signed and certified pursuant to Rule 11 and followed by the filing of a notice of consent from the codefendant itself, sufficiently establishes that codefendant's consent to removal").  Accordingly, 3M's unverified representation of consent by Aearo Technologies LLC is insufficient, and remand should issue forthwith.

---

[8] In the same footnote, 3M states Aearo Technologies, Inc. (which 3M acquired in 2008) is a distinct legal entity from Defendant Aearo Technologies LLC.

## IV. THERE IS NO EVIDENTIARY SUPPORT FOR REMOVAL

3M cannot satisfy its burden with self-interested, unsworn representations from counsel. *See Schnabel v. BorgWarner Morse TEC*, No. CV 08-04714 R (JTLx), 2008 WL 11336462, at *4 (C.D. Cal. Oct. 6, 2008) ("MDC has not presented any evidence, whether in the form of affidavits, declarations, documents or otherwise, demonstrating that any of its alleged acts or omissions were undertaken at the direction of a federal officer, that it has a colorable government contractor defense to Plaintiffs' claims, or that there is a causal nexus between Plaintiffs' claims, specifically their claims for failure to warn, and its alleged conduct at the direction of a federal officer.") (collecting cases); *Cabalic v. Owens-Corning Fiberglass Corp.*, No. C 94-2571 EFL, 1994 WL 564724, at *3 (N.D. Cal Oct. 6, 1994) ("The 'government contractor' defense is not colorable. No defendant has produced evidence that it presented specially designed products to the government under federal orders or specifications that directly conflicted with the state law duty upon which the defendants are now being sued. Most notably, no defendant produces any evidence whatsoever that the products it designed pursuant to government orders were different from those designed for civilian use in any manner pertinent to state law liability.").

And, yet, 3M's Notice of Removal lacks any evidentiary support whatsoever. Despite relying on alleged factual representations, the Notice fails to attach a single

supporting document or affidavit in support of its alleged facts. This failure of proof is fatal to 3M's effort to remove on both federal enclave and federal officer grounds. As the *Schnabel* court explained in its extensive review of applicable law, such failures of proof require remand because this Court cannot assume subject matter jurisdiction over state law claims based on unsubstantiated facts. *See Schnabel*, 2008 WL 11336462, at \*8 ("MDC has not presented any affidavits, declarations, or documents, including any relevant government contracts or specifications, demonstrating that it was prohibited from warning about the dangers of asbestos in its products."). Remand, therefore, is wholly appropriate.

## CONCLUSION

WHEREFORE, 3M's Notice of Removal falls well short of carrying its burden to demonstrate federal jurisdiction over Plaintiffs' state law claims. The Court should thus remand this matter back to the Fourth Judicial District Court of Hennepin County in the State of Minnesota.

Dated:  August 28, 2019

Respectfully submitted,

**WATTS GUERRA LLP**

By:   s/ *Mikal C. Watts*

Mikal C. Watts
Francisco Guerra IV
Erin Rogiers
5726 W. Hausman Rd., Suite 119
San Antonio, Texas 78249
Telephone:  (210) 448-0500
Facsimile:  (210) 448-0501
Email:  mcwatts@wattsguerra.com
fguerra@wattsguerra.com
erogiers@wattsguerra.com

Paul Danziger (pending *Pro Hac Vice*)
Rodrigo R. de Llano (pending *Pro Hac Vice*)
Danziger & DeLlano, LLP
440 Louisiana, Suite 1212
Houston, TX 77002
Telephone: 713 222-9998
Facsimile: 713 222-8866
Email:  rod@dandell.com
paul@dandell.com

Lewis A. Remele, Jr. (MN #90724)
Aram V. Desteian (MN #396021)
Casey D. Marshall (MN #395512)
Sheri L Stewart (MN #400254)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone:  (612) 333-3000
Facsimile:   (612) 333-8829
Email:  lremele@bassford.com
adesteian@bassford.com
cmarshall@bassford.com
sstewart@bassford.com

**ATTORNEYS FOR PLAINTIFFS**

## Certificate of Compliance

Plaintiffs' counsel certifies that this Memorandum in Support of Plaintiffs' Motion for Remand complies with the limits set forth in Local Rule 7.1(f). Excluding the case caption, the signature block, the certificate of service and this certification, this Memorandum contains 7,555 words. Plaintiffs' counsel has relied on the word count in Microsoft Word and Plaintiffs' counsel certifies that the function was specifically applied to include all text, including headings, footnotes and quotations.

*/s/ Mikal C. Watts*
Mikal C. Watts


## Certificate of Conference

Plaintiffs' counsel certifies, pursuant to Local Rule 7.1(B) that, prior to filing this Motion to Remand, counsel for Plaintiffs and counsel for 3M conferred in good faith by telephone, but were unable to resolve the matter.

*/s/ Mikal C. Watts*
Mikal C. Watts

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Memorandum In Support of Motion to Remand was filed on August 28, 2019, using the Court's electronic filing system which sent notification to all attorneys of record.

*/s/ Mikal C. Watts*
Mikal C. Watts